1

2

3

4                      UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7  WESTPORT INSURANCE                      Case No. 16-cv-01246-WHO
   CORPORATION,

8              Plaintiff,                  **ORDER DENYING MOTION FOR
                                           JUDGMENT ON THE PLEADINGS**
9        v.
                                           Re: Dkt. No. 40
10 CALIFORNIA CASUALTY
   MANAGEMENT CO.,
11
               Defendant.
12
                               **INTRODUCTION**
13
        Plaintiff Westport Insurance Corporation ("Westport") and defendant California Casualty
14
   Management Co. ("California Casualty") both provided insurance for three school administrators
15
   in the Moraga School District in California.  When the administrators were sued for negligent
16
   supervision, Westport funded the settlement of the claims.  Westport now seeks contribution from
17
   California Casualty and moves for judgment on the pleadings.  For the reasons discussed below,
18
   the motion is DENIED.
19
                               **BACKGROUND**
20
   I.    FACTUAL BACKGROUND
21
        The following facts are taken from Westport's complaint and the exhibits attached to it,
22
   except where otherwise indicated.  The parties' dispute arises out of claims brought by three
23
   students (Does 1, 2, and 3) at Joaquin Moraga Intermediate School in the Moraga School District
24
   ("School District") who alleged that they were sexually molested by their teacher in the mid-
25
   1990s.  Compl. ¶ 2 (Dkt. No. 1).  When the students came forward in 1996, the teacher killed
26
   himself.  *Id.*  In 2013, the students sued three school administrators (collectively,
27
   "Administrators") and the School District for negligent supervision of the teacher.  *Id.* ¶¶ 10-22.
28

United States District Court
Northern District of California

Does 1 and 2 filed one lawsuit against the Administrators and the School District in January 2013. *Id.* ¶ 10.  Doe 3 filed another lawsuit against the Administrators and the School District in the same month.  *Id.* ¶ 19.  The students alleged that the teacher had molested them in the following school years:

|  | 1993-1994 School Year | 1994-1995 School Year | 1995-1996 School Year | 1996-1997 School Year |
|---|---|---|---|---|
| **Doe 1** | X | X | X |  |
| **Doe 2** |  |  | X | X |
| **Doe 3** |  |  |  | X |

*Id.* ¶¶ 12-14, 16-17, 21; *see also* Mot. at 6 (Dkt. No. 14).

Westport provided insurance for both the School District and the Administrators.  Compl. ¶¶ 23-30.[1]  Specifically, Westport issued two policies of primary general liability insurance ("Westport Primary Policies") to the School District.  One of the Westport Primary Policies was effective from October 1, 1991 through October 1, 1994, and the other was effective from October 1, 1994 through October 1, 1997.  *Id.* ¶¶ 24-25.  According to Westport, the first pages of both of the Westport Primary Policies "indicate a limit of liability of '$1,000,000 each occurrence.'"  Mot. at 3 (quoting Compl. Exs. C, D).  Westport also issued four policies of excess liability insurance ("Westport Excess Policies") to the School District.  One of the excess policies was effective from October 1, 1991 to October 1, 1994; the other three were effective for consecutive one-year periods starting October 1, 1994.  Compl. ¶ 27.[2]

In contrast with Westport, California Casualty provided insurance only for the Administrators, not for the School District.  Specifically, California Casualty issued successive annual liability policies ("California Casualty Polices") to the Association of California School Administrators and the Association of California Community College Administrators.  *Id.* ¶ 31.

---

[1] Each of the relevant policies issued by Westport was issued through a predecessor company. Compl. ¶¶ 23, 27.

[2] Westport attaches a copy of one of the Westport Excess Policies to its complaint.  Compl. ¶ 28, Ex. E.  Westport alleges that "[e]ach of the Westport Excess Policies contains substantially the same terms and conditions."  Compl. ¶ 28.  Because of the quality of the copy attached to the complaint, much of the language of the policy is illegible.  *See* Compl. Ex. E.

United States District Court
Northern District of California

The California Casualty Policies were in effect from at least July 1, 1994 to at least July 1, 1997.
*Id.* ¶ 32.  Exhibit F to Westport's complaint is a copy of the policy in effect from July 1, 1994
through July 1, 1995.  *See* Compl. Ex. F; Ans. ¶ 34 (Dkt. No. 4).  Westport alleges that each of the
California Casualty Policies contains "substantially similar" language.  Compl. ¶ 34.  In its
answer, California Casualty admits that Exhibit F is a copy of the policy in effect from July 1,
1994 through July 1, 1995 but does not admit that each of the California Casualty Policies uses
substantially similar language.  *See* Ans. ¶ 34.  The policy attached to the complaint defines the
term "Insured," in relevant part, as "[a] member of the Associate of California School
Administrators who is employed by a school board, board of trustees or other similar governing
body of an educational unit."  Compl. Ex. F § II.E.  The policy also includes the following
provisions:

> COVERAGES AND LIMITS OF LIABILITY
>
> Coverage A.          Administrator Excess Liability
>                      $150,000.00     per      occurrence,     Over
>                      $1,000,000.00    of    Underlying    Primary
>                      Layer/$2,000,000.00 aggregate per annual
>                      policy period
>
> [ . . . ]
>
> III. COVERAGES
>
> In this section the Company indicates the coverages provided,
> subject to the exclusions, limits of liability and other terms of this
> policy.
>
> A.       ADMINISTRATORS' EXCESS LIABILITY. The Company
> agrees to pay all damages in excess of the required underlying
> primary collectible insurance or self-insurance which the insured
> shall become legally obligated to pay as a result of any claim arising
> out of an occurrence in the course of the insured educational
> employment activities, and caused by any acts or omissions of the
> insured, or any other person for whose acts the insured is legally
> liable, not to exceed the limits of liability stated in the Declarations
> for this coverage.
>
> [ . . . ]
>
> IV. LIMITS OF LIABILITY
>
> The combined limits of liability for each coverage stated in the
> Declarations are the limits of the Company's liability to each
> Insured for all damages arising out of one occurrence, except as

United States District Court
Northern District of California

3

provided in Coverage A, additional coverages, but in no event shall the Company's liability be more than $250,000 for all damages and costs of defense arising out of one occurrence. The fact that there may be multiple claims against the Insured as a result of the occurrence shall not operate to increase the limit of the Company's liability under this policy.  The aggregate liability for all damages for all Insureds occurring during any one annual policy period shall not exceed $2,000,000.00.

[ . . . ]

VII. EXCLUSIONS

A.    OTHER INSURANCE. At the time of an occurrence there must be underlying primary collective insurance or self-insurance available to the insured; particularly the insurance or self-insurance provided on behalf of the insured pursuant to Sections 35208, 35214, 72506 and 72511 of the Education Code of the State of California; or pursuant to the provisions of Sections 825 and 825.4 of the Government Code of the State of California; or insurance or self-insurance provided on behalf of the insured by any public entity, school district, governing board, board of trustees, board of regents or any agency established to maintain the California public school system or a four-year institution of higher education; with a minimum per occurrence limit of $1,000,000. There shall be no insurance afforded under this policy until the required $1,000,000 limit of liability afforded the Insured by such other insurance or self-insurance is exhausted. Insurance under this policy shall not be construed to be pro rata, concurrent or contributing with any other insurance or self-insurance which is available to the Insured.

Compl. Ex. F (emphasis in original); *see also* Compl. ¶ 38.[3]

On or about September 3, 2013, the Doe 3 lawsuit settled for $1.8 million.  Compl. ¶ 45. On or about June 12, 2014, the Does 1 and 2 lawsuit settled for $14 million (or $7 million per student).  *Id.* ¶ 54.  Westport asserts that the settlements more than exhausted the applicable limits on the Westport Primary Polices, thereby requiring California Casualty to contribute under the California Casualty Policies.  *Id.* ¶¶ 46-47, 54-55.  When California Casualty refused to contribute, Westport paid the remainder of the settlements from the Westport Excess Policies.  *Id.* ¶¶ 56-57.

---

[3] California Casualty states that it believes that the School District and Administrators were also insured by "Westchester Insurance" in addition to Westport and California Casualty.  It asserts that the applicable Westchester Insurance policy ran from October 1, 1995 through October 1, 1996, with liability limits of $4,000,000 per occurrence and $4,000,000 annual aggregate.  Suppl. Oppo. at 4, 8 (Dkt. No. 45).  California Casualty also asserts, without explanation, that Westport issued "*five* excess policies," not four, as Westport alleges in its complaint.  *Id.* at 8 (emphasis in original).

4

United States District Court
Northern District of California

## II.   PROCEDURAL BACKGROUND AND WESTPORT'S MOTION FOR JUDGMENT ON THE PLEADINGS

### A.   Procedural History

Westport initiated this action on April 13, 2015 in the United States District Court for the District of Kansas.  Dkt. No. 1.  The complaint alleges two causes of action against California Casualty: (1) declaratory relief; and (2) equitable contribution.  Compl. ¶¶ 73-81.  The parties agree that both causes of action are governed by California law.  *See, e.g.,* Mot. at 10 n.2; Oppo. at 1 n.1 (Dkt. No. 45).

In support of the declaratory relief cause of action, Westport asserts that California Casualty "has refused to satisfy its contractual obligations to pay for a portion of [the] settlement amount exceeding $1 million per occurrence."  Compl. ¶ 75.  Westport seeks three declarations: (1) California Casualty's coverage was immediately triggered upon exhaustion of the Westport Primary Polices; (2) California Casualty's coverage "does not pro rate or contribute with the coverage provided by the Westport Excess Policies," and instead must "exhaust before the coverage provided by the Westport Excess Policies is triggered;" and (3) upon exhaustion of the Westport Primary Policies, California Casualty was "obligated to pay up to a full per occurrence policy limit for each Administrator in connection with each underlying Doe plaintiff in each year that California Casualty's coverage applied."  *Id.* ¶ 76.  Westport summarizes the third of these declarations as a finding that the "$150,000 per occurrence" limit of the California Casualty Policies applies (1) per student, (2) per policy period, (3) per Administrator.  Mot. at 14-16.

In support of the equitable contribution cause of action, Westport asserts that it "paid a loss that is and was rightfully the obligation of California Casualty," and that it "has a right of equitable contribution against California Casualty to recover that share of the settlements paid by Westport that should have been paid by California Casualty."  *Id.* ¶¶ 80-81.

Westport filed its motion for judgment on the pleadings on July 22, 2015.  Dkt. No. 13. On November 13, 2015, after the motion was fully briefed, California Casualty moved to transfer venue, Dkt. No. 23, and on March 14, 2016 the case was transferred to this district, Dkt. Nos. 30, 31.

United States District Court
Northern District of California

1          **B.**       **Westport's Motion for Judgment on the Pleadings**

2          Westport organizes its motion according to the three declarations it seeks.

3          With respect to whether California Casualty's coverage was immediately triggered upon

4 exhaustion of the Westport Primary Polices, Westport focuses on two portions of the California

5 Casualty Policies.  First, Westport points to the language in the "Coverages and Limits of

6 Liability" section stating that "Administrator Excess Liability" is limited to "$150,000 per

7 occurrence, Over $1,000,000.00 of Underlying Primary Layer."  Mot. at 11; Compl. Ex. F.

8 Second, Westport points to the language in the "Other Insurance" section stating that

> [a]t the time of an occurrence there must be underlying primary
> collective insurance or self-insurance available to the insured;
> particularly the insurance or self-insurance provided on behalf of the
> insured pursuant to Sections 35208, 35214, 72506 and 72511 of the
> Education Code of the State of California; or pursuant to the
> provisions of Sections 825 and 825.4 of the Government Code of the
> State of California; or insurance or self-insurance provided on behalf
> of the insured by any public entity, school district, governing board,
> board of trustees, board of regents or any agency established to
> maintain the California public school system or a four-year
> institution of higher education; with a minimum per occurrence limit
> of $1,000,000. <u>There shall be no insurance afforded under this
> policy until the required $1,000,000 limit of liability afforded the
> Insured by such other insurance or self-insurance is exhausted</u>

16 Mot. at 11; Compl. Ex. F § VII.A.  Westport contends that "[t]hese two separate provisions leave

17 no doubt that California Casualty is contractually obligated to insure the Administrators when the

18 underlying $1 million of primary coverage (provided by Westport) is exhausted."  Mot. at 11.

19          With respect to whether California Casualty's coverage "does not pro rate or contribute

20 with the coverage provided by the Westport Excess Policies," and instead must "exhaust before

21 the coverage provided by the Westport Excess Policies is triggered," Compl. ¶ 76, Westport

22 focuses on the language in the "Other Insurance" section of the California Casualty Policies

23 stating that the insurance provided by the policies "shall not be construed to be pro rata,

24 concurrent or contributing with any other insurance or self-insurance which is available to the

25 Insured."  Mot. at 12; Compl. Ex. F. § VII.A.  Westport contends that this language establishes

26 that "once the California Casualty Policies are triggered upon exhaustion of $1 million in primary

27 insurance, California Casualty [must pay] the loss up to its policy limit . . . without regard to other

28

6

available excess coverage." Mot. at 12.

With respect to whether the "$150,000 per occurrence" limit of the California Casualty Policies applies (1) per student, (2) per policy period, (3) per Administrator, Westport points to the language in the "Coverages and Limits of Liability" section of the California Casualty Policies indicating a limit of "$150,000.00 per occurrence" for "Administrator Excess Liability." Mot. at 14. Westport asserts that under *State Farm Fire & Cas. Co. v. Elizabeth N.*, 9 Cal. App. 4th 1232 (1992), claims of negligent supervision resulting in the molestation of multiple children present one "occurrence" per child, per policy period in which the molestation allegedly occurred. Mot. at 14. Under this analysis, the claims of each Doe plaintiff in this case present one "occurrence" for each policy period in which the Doe plaintiff alleged that he or she was molested. *Id.* Westport further contends that because the California Casualty Policies provide that the "$150,000 per occurrence" limit of liability applies "to each Insured," Compl. Ex. F § IV, and each Administrator is an "Insured" under the Policies, California Casualty is obligated to pay up to $150,000 per student, per policy period, *and* per Administrator. Mot. at 14-15. Westport submits the following chart summarizing its stance on the amount California Casualty is obligated to pay:

| | 1993-1994 Policy Period | 1994-1995 Policy Period | 1995-1996 Policy Period | 1996-1997 Policy Period | Total $ Amount |
|---|---|---|---|---|---|
| **Doe 1** | $450,000 ($150K x 3 Administrators) | $450,000 ($150K x 3 Administrators) | $450,000 ($150K x 3 Administrators) | -- | $1,350,000 |
| **Doe 2** | -- | -- | $450,000 ($150K x 3 Administrators) | $450,000 ($150K x 3 Administrators) | $900,000 |
| **Doe 3** | -- | -- | -- | $450,000 ($150K x 3 Administrators) | $450,000 |
| **Total** | | | | | $2,700,000 |

Mot. at 16 (edited slightly for clarity).

### C. California Casualty's Opposition

California Casualty filed one opposition brief while this case was still pending in the District of Kansas, Dkt. No. 20, and then a second opposition brief after Westport noticed its

1    motion for hearing in this Court, Dkt. No. 45 ("Suppl. Oppo.").  After California Casualty filed its

2    second opposition brief, I issued an order allowing Westport "to file a second reply brief

3    addressing any new arguments raised in [California Casualty's] second opposition brief," so long

4    as Westport did not "repeat or readdress arguments made during the parties' first round of

5    briefing."  Dkt. No. 46.  Westport subsequently filed a second reply brief.  Dkt. No. 48 ("Suppl.

6    Reply Br.").  I assume that California Casualty means to rely on its second opposition brief, not its

7    first, and I consider only the arguments in the second opposition brief in resolving Westport's

8    motion.

9           California Casualty raises a number of arguments in opposition to Westport's motion,

10   including that:

11          (1) its obligations under the California Casualty Polices are not triggered until $1,000,000

12   in primary insurance coverage has been paid "for each Insured," i.e., each Administrator, and

13   Westport has not identified – much less established – how much it paid for each Administrator.

14   Suppl. Oppo. at 1-2, 7.

15          (2) Westport's claims are barred by California Labor Code section 2802 and California

16   Government Code sections 825 and 825.4.  *Id.* at 5-7.

17          (3) several of the affirmative defenses in its answer "would defeat any recovery by

18   Westport," and Westport does not address these affirmative defenses in its briefing.  *Id.* at 5.

19          (4) its obligations under the California Casualty Polices are not triggered until "all other

20   insurance" is exhausted, not just the primary insurance available under the Westport Primary

21   Policies.  *Id.* at 7.

22          (5) even if it is required to contribute, the contribution amount should be prorated against

23   the other available excess policies, and it should thus have an opportunity to conduct discovery

24   regarding other excess policies covering the Administrators.  *Id.* at 8.

25          (6) Westport has not submitted complete copies of each of the Westport Primary Polices,

26   the Westport Excess Policies, or the California Casualty Policies.  *Id.* at 7 n.3, 8-9.

27          (7) Westport's interpretation of the term "occurrence" as used in the California Casualty

28   Policies is incorrect.  *Id.* at 9.

United States District Court
Northern District of California

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). "All allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party." *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). "As a result, a plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Id.* "Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." *Id.*

**DISCUSSION**

Westport is not entitled to judgment on the pleadings. As California Casualty points out, Westport has not submitted complete copies of each of the Westport Primary Policies, the Westport Excess Policies, or the California Casualty Policies.[4] Nor does Westport offer any discussion of the terms of either (1) the Westport Excess Policies or (2) the additional insurance policies alleged by California Casualty. Even assuming that further evidence regarding the Westport Primary Policies or California Casualty Polices is not necessary to resolve this case, evidence regarding the Westport Excess Policies, and the additional excess insurance policies alleged by California Casualty, likely is.

Westport contends that its Excess Policies are irrelevant because its motion "does not depend upon" the terms of those policies. Reply at 15-16. But this argument assumes that Westport is correct that once triggered, the California Casualty Policies do not share with any other insurance. Westport bases this argument on the language in the California Casualty Policies

---

[4] Westport states that it did not submit complete copies of each of its Primary and Excess Policies "for the simple reason that certain of those policies are missing." Reply at 15 (Dkt. No. 22). Westport does not explain why it did not submit copies of each of the California Casualty Policies.

United States District Court
Northern District of California

1    stating that their coverage "shall not be construed to be pro rata, concurrent or contributing with

2    any other insurance or self-insurance which is available to the insured." Compl. Ex. F. § VII.A;

3    *see also* Mot. at 12; Reply at 5-8.  That language is ambiguous at best – in particular when

4    considered in light of the contract as a whole – and not appropriate for resolution based on the

5    current record.  If it turns out that the California Casualty Policies do share with other insurance, I

6    see no reason why evidence regarding the other insurance available to the Administrators would

7    not be relevant.

8       California Casualty's other arguments in opposition to Westport's motion for judgment on

9    the pleadings may also have merit, but I need not address them to resolve the motion.  At this

10    juncture, Westport is not entitled to the judgment it seeks.

**CONCLUSION**

11

12       Westport's motion for judgment on the pleadings is DENIED.

13       **IT IS SO ORDERED**.

14    Dated: July 8, 2016

15

16                       WILLIAM H. ORRICK
                          United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

10