UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTPORT INSURANCE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA CASUALTY MANAGEMENT CO.,<br><br>Defendant. | Case No. 3:16-cv-01246-WHO<br><br>**ORDER GRANTING MOTION TO SET PRE-JUDGMENT INTEREST**<br><br>Re: Dkt. No. 82 |

## INTRODUCTION

I granted summary judgment on plaintiff Westport Insurance Corporation's ("Westport") motion, awarding judgment in favor of Westport in the amount of $2.6 million, plus interest, against defendant California Casualty Management Company ("California Casualty") because California Casualty had refused to contribute to the settlement of the underlying sexual molestation claims. Final Judgment ¶ 4 (Dkt. No. 80). Westport now moves to set pre-judgment interest. Pursuant to Civil Local Rule 7-1(b), this matter is appropriate for resolution without oral argument, and the May 31, 2017 hearing is VACATED. For the reasons discussed below, Westport's motion is GRANTED; the judgment shall be corrected to include $755,637.20 in pre-judgment interest.

## BACKGROUND

The background of this case and the underlying claims is described in detail in the Order Granting Westport's Motion for Summary Judgment and Denying California Casualty's Motion for Summary Judgment ("Prior Order")(Dkt. No. 78). Briefly, three students (Does 1, 2, and 3) at Joaquin Moraga Intermediate School in the School District alleged that they were sexually molested in the mid-1990s by their teacher. Compl. ¶ 2 (Dkt. No. 1). In January 2013, Does 1

and 2 filed one lawsuit against the Administrators and the School District, and the same month, Doe 3 filed a separate lawsuit against the Administrators and the School District. *Id*. ¶¶ 10, 19. Westport provided insurance for the School District via two policies of primary general liability insurance, under which the Administrators were also insured. DeLonday Aff. ¶ 2 (Dkt. No. 68). It also issued to the School District a series of excess liability insurance policies. *Id*. ¶ 8. In contrast with Westport, California Casualty provided only excess liability insurance that covered the Administrators, not the School District. Moreno Decl. ¶ 6 (Dkt. No. 63). On July 29, 2013,[1] Westport paid $1.8 million to settle the Doe 3 claim, and on June 26, 2014, it paid $14 million to settle the Doe 1 and Doe 2 claims. Third DeLonay Aff. ¶¶ 3–5 (Dkt. No. 82-1). California Casualty declined to contribute.

On summary judgment, I ruled that because the settlements exhausted the applicable limits of Westport's primary policies, California Casualty was required to contribute to the settlements. Prior Order at 12–14 (Dkt. No. 78). Westport initially sought contribution of $2.7 million, *see* Westport's Mot. for Summ. J. at 23 (Dkt. No. 67), but in opposition to California Casualty's cross-motion for summary judgment, proposed allocating liability on an equal basis, apportioning 25 percent to each of the four defendants, Westport's Opp'n to Summ. J. at 18–21 (Dkt. No. 71). Since California Casualty insured only the Administrators and not the School District, this proposed apportionment reduced Westport's contribution request by $100,000, to $2.6 million. *Id*. at 21. I agreed that the settlements should be allocated among the defendants, and awarded judgment against California Casualty and in favor of Westport in the amount of $2.6 million, plus interest. Final Judgment ¶ 4 (Dkt. No. 80).

Westport now seeks to set pre-judgment interest at an annual rate of 10 percent, for an additional award of $755,637.20. Westport's Mot. to Set Pre-Judgment Interest at 2 ("Mot.")(Dkt. No. 82).

---

[1] In the complaint, Westport indicated that the Doe 3 lawsuit settled around September 3, 2013. Compl. ¶ 45. California Casualty has not contested that the funding date was July 29, 2013, however, and so I have used it for purposes of calculating the prejudgment interest.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 60(a) allows a court to correct clerical mistakes in judgments. Fed. R. Civ. P. 60(a). It "governs postjudgment motions for prejudgment interest when the original judgment explicitly allows for prejudgment interest but fails to specify the precise dollar value of interest, provided that the amount can be calculated later with relative certainty." *McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1133 (9th Cir. 2004). Whereas when an original judgment does not allow for mandatory prejudgment interest, revising the judgment to include prejudgment interest requires amending the judgment under Federal Rule of Civil Procedure 59(e). *Id*. at 1131 (citing *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 176–77 n.3 (1989)).

**DISCUSSION**

The Final Judgment awarded $2.6 million, plus interest. Final Judgment ¶ 4. It did not include a precise dollar amount for interest. Accordingly, I treat Westport's "motion to set pre-judgment interest" as a motion under Federal Rule of Civil Procedure 60(a) to correct the judgment, not to amend it under Federal Rule of Civil Procedure 59(e). California Casualty raises three arguments opposing Westport's motion. *See* California Casualty's Opp'n at 1 ("Opp'n")(Dkt. No. 84). It contends that the appropriate interest rate is 7 percent, not 10 percent; it urges that the claim was unliquidated, and therefore an award of prejudgment interest is discretionary and not mandatory; and it insists that prejudgment interest is limited to a start date no earlier than the date this action was filed. *Id*.

**I. WESTPORT'S DAMAGES WERE CERTAIN AND AN AWARD OF PREJUDGMENT INTEREST IS MANDATORY**

"Prejudgment interest in a diversity action is a substantive matter governed by state law." *U.S. Fid. & Guar. Co. v. Lee Investments LLC*, 641 F.3d 1126, 1139 (9th Cir. 2011)(quotation marks and alterations omitted). Under California law, "[a] person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day[.]" Cal. Civ. Code § 3287(a).

3

United States District Court
Northern District of California

Westport contends that its "damages became liquidated and certain on the date that it paid the underlying settlements." Mot. at 3. California Casualty responds that "[t]he damages awarded by the Court were determined based upon the application of facts to the case that allowed the Court to allocate the settlement among the underlying defendants." Opp'n at 3. It is true that the summary judgment order allocated the damages between the four defendants in the underlying actions, but it is not true that Westport's damages lacked the certainty required to trigger the mandatory award of prejudgment interest prior to issuance of the summary judgment order.

The California Supreme Court has held, "[T]he certainty required of Civil Code section 3287, subdivision (a), is absent when the amounts due turn on disputed facts, but not when the dispute is confined to the rules governing liability." *Olson v. Cory*, 35 Cal. 3d 390, 402 (Cal. 1983); *see also Evanston Ins. Co. v. OEA, Inc.*, 566 F.3d 915, 921 (9th Cir. 2009)("California cases uniformly have interpreted the 'vesting' requirement as being satisfied at the time that the amount of damages become certain or capable of being made certain, not the time liability to pay those amounts is determined."); *Thompson v. Asimos*, 6 Cal. App. 5th 970, 991–92 (Cal. Ct. App. 2016)("Under [Cal. Civ. Code § 3287(a)], prejudgment interest is allowable as of right where the amount due plaintiff is fixed by the terms of a contract… . On the other hand, interest is not allowable where the amount of the damages depends upon a judicial determination based on conflicting evidence... .").

The dispute in this case was confined to the rules governing liability. In ruling on the parties' cross-motions for summary judgment, I looked to the policies to determine that California Casualty's obligation was triggered upon exhaustion of the primary layer, and Westport's excess policies were in excess of other collectible insurance. Prior Order at 16–17. I then concluded that "California Casualty must pay up to its policy limit without contribution from other sources." *Id*. at 18 (quoting California Casualty policies). As in *Hartford Accident and Indemnity Company v. Sequoia Insurance Company*, I merely determined the priority of the policies, which was "purely a question of law[.]" 211 Cal. App. 3d 1285, 1307 (Cal. Ct. App. 1989). Accordingly, "the amount of damages were never 'unliquidated' or 'contingent' but rather, only the legally proper order of priority of the respective policies was uncertain." *Id*.

4

The allocation among defendants dictated in the Prior Order turned on California Casualty's liability, not on a contribution formula or other disputed facts determined by the court. California Casualty has never disputed the fact that its excess insurance policies covered three out of the four defendants in the underlying actions, nor has it disputed the limits of that coverage. It simply challenged the priority of its and Westport's excess policies based solely on extrinsic evidence, and then refused to pay on the grounds that its policies were never triggered.[2] But "a defendant's denial of liability does not make damages uncertain for purposes of Civil Code section 3287." *Wisper Corp. v. California Commerce Bank*, 49 Cal. App. 4th 948, 958 (Cal. Ct. App. 1996). California Casualty knew that it provided excess insurance coverage to the three administrators, and it knew the limits of that coverage. Once it knew that the settlement amount exhausted the primary layer, "the amount due [Westport was] fixed by the terms of a contract."[3] *Thompson*, 6 Cal. App. 5th at 991.

This conclusion is not altered by the fact that the order granting Westport's motion for summary judgment equally apportioned liability among the four defendants in the underlying actions. California Casualty could have calculated "from reasonably available information"[4] the amount it owed. *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal. App. 4th 740, 774 (Cal. Ct. App. 2002); *see generally Watson Bowman Acme Corp. v. RGW Construction, Inc.*, 2 Cal. App. 5th 279, 293 (Cal. Ct. App. 2016)("From the defendant's perspective, the certainty requirement promotes equity because liability for prejudgment interest occurs only when the defendant knows or can calculate the amount owed and does not pay.").

Having concluded that Westport's damages were certain and California Civil Code section 3287(a) applies, "the trial court has no discretion—it must award prejudgment interest from the

---

[2] At one point, it did not even challenge the priority and admitted that its "obligations would kick in after the primary layer was exhausted." Prior Order at 11 (citing 12/12/12 Letter from California Casualty, Dkt. No. 69-3); *see id.* at 17.

[3] In this vein, Westport's claim for "equitable contribution" is more appropriately labeled a claim for "equitable subrogation." *See infra* section II (discussing proper interest rate).

[4] The "reasonably available information" being that it provided coverage for three out of four of the defendants, the limits of that coverage, the limits of the underlying primary layer, and the total amount Westport paid to settle the claims.

5

1  first day there exists both a breach and a liquidated claim." *Thompson*, 6 Cal. App. 5th at 992.
2  Accordingly, Westport is entitled to recover prejudgment interest from the date it paid the
3  settlements in the underlying actions: June 26, 2014 for the Doe 1 and Doe 2 settlement, and July
4  29, 2013 for the Doe 3 settlement. Third DeLonay Aff. ¶¶ 3–4.

## II. INTEREST IS CALCULATED BASED ON A 10 PERCENT ANNUAL RATE

California Casualty argues that Westport is only entitled to a 7 percent per annum interest rate because its claim was for equitable contribution, not breach of contract. Opp'n at 4. California Casualty is correct that the appropriate prejudgment interest rate for equitable contribution claims is 7 percent per annum, but this is not an equitable contribution case.

"Equitable contribution apportions costs among insurers *sharing the same level of liability* on the same risk as to the same insured, and is available when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others." *Safeco Ins. Co. of Am. v. Superior Court*, 140 Cal. App. 4th 874, 879 (2006)(emphasis added)(internal quotation marks omitted). California Casualty and Westport's respective excess policies did not share the same level of liability: "The plain text of the policies clearly indicates that California Casualty's policy triggers upon exhaustion of Westport's Primary coverage. Once California Casualty's secondary policy exhausts, Westport's Excess Policies cover the remaining balance." Prior Order at 17. When California Casualty refused to contribute to the settlement once its obligation was triggered (upon exhaustion of the primary layer), it breached the terms of its contract.

While Westport mislabeled its second cause of action, its claim is one for "equitable subrogation" and sounds in contract. *See Am. Alternative Ins. Corp. v. Hudson Specialty Ins. Co.*, 938 F. Supp. 2d 908, 916 (C.D. Cal. 2013)("Equitable subrogation allows the insurer to stand in the shoes of the insured and assert all claims against another insurer which the insured himself could have asserted.")(quotation marks and alterations omitted). Under these circumstances, the appropriate prejudgment interest rate is 10 percent. *See* Cal. Civ. Code § 3289 ("If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach."); *see also Clarendon Nat'l Ins. Co.*

*v. Ins .Co. of the West*, 2006 WL 2594452, at *3 (E.D. Cal. Sept. 11, 2006)(applying California 10% per annum statutory rate to insurer subrogation claim).

Based on the foregoing, the calculation of pre-judgment interest is:

| Claims | Principal Amount of Judgment | Number of Days | Daily Interest Rate | Pre-Judgment Interest |
|---|---|---|---|---|
| Does 1 & 2 | $2,250,000.00 | 1,016 days | .0274% | $626,364.00 |
| Doe 3 | $350,000.00 | 1,348 days | .0274% | $129,273.20 |
| **TOTAL** | | | | **$755,637.20** |

The Final Judgment shall be corrected to include pre-judgment interest in the amount of $755,637.20. Accordingly, judgment is awarded against California Casualty and in favor of Westport in the amount of $2.6 million, plus $755,637.20 pre-judgment interest, for a total of $3,355,637.20.

**CONCLUSION**

Westport's motion to set pre-judgment interest is GRANTED. Final Judgment shall be corrected to include $755,637.20 in pre-judgment interest.

**IT IS SO ORDERED.**

Dated: May 30, 2017

William H. Orrick
United States District Judge